# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7151 | **DATE** | 5/18/2004 |
| **CASE TITLE** | Hunt vs. Pepsico, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion to dismiss as to Count 2 but otherwise denies the motion (#6). Plaintiffs are directed to amend their complaint within 14 days to provide the factual basis for Lloyd Nelson's standing to sue as successor in interest of Nate Nelson. Plaintiffs have the same 14 days to join as plaintiffs the members of the Flamingos, or their successors in interest, who are not currently parties to the case. If plaintiffs fail to join the absentees, the Court will order their joinder as involuntary plaintiffs unless they waive their right to sue defendants for their use of I Only Have Eyes For You.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 21 2004 | |
| ✓ | Docketing to mail notices. | | date docketed | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice |
| | | | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES HUNT, TERRY JOHNSON )
JACOB C. CAREY, Administrator of the )
estate of Jacob A. Carey, and LLOYD )
NELSON, )
)
Plaintiffs, )
)
v. ) Case No. 03 C 7151
)
PEPSICO, INC. and BBDO )
WORLDWIDE, INC., )
)
Defendants. )

DOCKETED
MAY 2 1 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Charles Hunt, Terry Johnson, Jacob C. Carey as administrator of the estate of Jacob A. Carey, and Lloyd Nelson, individually and on behalf of his mother, sued Pepsico, Inc. and the advertising agency BBDO Worldwide, Inc., for using the song *I Only Have Eyes For You* in a Pepsi commercial without paying them reuse fees or royalties. Charles Hunt, Terry Johnson and the late Jacob A. Carey and Nate Nelson were members of the Flamingos, the group that recorded the song in 1959. At least two former members of the Flamingos, Paul Wilson and Ezikil Carey (or their successors in interest), are not party to the suit.

Plaintiffs allege that they recorded the song for Gone Recording Corp., which was a signatory to a collective bargaining agreement with the American Federation of Television and Radio Artists ("AFTRA"). Am. Compl. ¶¶ 4-5. Plaintiffs further allege that Pepsico and BBDO



were bound by a collective bargaining agreement with AFTRA and the Screen Actors Guild called the Commercials Contract,[1] which stated that they would not use a sound recording made under the jurisdiction of AFTRA in a commercial "without separately bargaining with the principal performer and reaching an agreement regarding such use prior to any utilization of such [] sound track." *Id.* ¶ 6. In Count 1 of their amended complaint, Plaintiffs claim Pepsico and BBDO breached the Commercials Contract by using *I Only Have Eyes For You* in a 1997 Super Bowl commercial without bargaining with the members of the Flamingos or their successors in interest for use of the song. *Id.* ¶ 8; Mot. to Dismiss at 2.

Count 2 of the amended complaint arises out of the licensing agreement BBDO entered on behalf of Pepsico with Warner Special Products as agent for Rhino Records, the successor in interest to Gone Recording Corp. Am. Compl. ¶ 11. Defendants agreed to pay Warner Special Products a fee of $250,000 for use of the song. *Id.* The agreement contained a clause requiring Defendants to "obtain in writing all requisite consents and permissions of labor organizations" and "pay all re-use payments, fees, royalties and other sums required to be paid for such consents and permissions, (including, without limitation so-called 'residuals') under applicable collective bargaining agreements, or otherwise in connection with Licensee's use of the Recording(s)." *Id.* Ex. 1 ¶ 7. Plaintiffs allege the Commercials Contract was the "applicable collective bargaining agreement," and Defendants' failure to negotiate individually with Plaintiffs for use of the song constituted a violation of the licensing agreement with Warner. Plaintiffs claim they are third-party beneficiaries of the licensing agreement, and in Count 2 they sue Defendants for breach.

---

[1] Defendants refer to the agreement as the Screen Actors Guild 1994 Commercials collective bargaining agreement.

The case is now before the Court on Defendants' motion to dismiss. Defendants offer four grounds upon which their motion should be granted: (1) Nate Nelson's son Lloyd Nelson lacks standing to sue; (2) Plaintiffs have not named all indispensable parties; (3) Count 1 must be dismissed because use of *I Only Have Eyes For You* is not covered by the Commercials Contract; and (4) Count 2 is preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). For the reasons stated below, the Court grants Defendants' motion to dismiss in part and denies it in part, and directs Plaintiffs to supplement and amend their complaint.

## 1. *Lloyd Nelson's standing to sue*

Defendants argue that Nelson does not have standing to sue for himself and on behalf of his mother. Defendants rely on our decision in *Abiola v. Abubakar*, No. 02 C 6093, 2003 WL 22012220 (N.D. Ill. Aug. 25, 2003), in which we held that a daughter had to show she was a proper representative of her parents' estate to have standing to sue for their mistreatment at the hands of Nigeria's military regime before their deaths. We explained that the Illinois Survival Act governed her claims and under the Act, "'only the administrator or executor of a decedent's estate, and not the decedent's survivors, can maintain an action on behalf of the decedent." *Id.* at, *2 (quoting *Wilmere v. Stibolt*, 152 Ill. App. 3d 642, 645, 504 N.E.2d 916, 918 (1987)).

Defendants' reliance on *Abiola* is misplaced because the Illinois Survivor Act is not applicable to this case. The Survival Act "merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *National Bank of Bloomington v. Norfolk & Western Railway Co.*, 73 Ill. 2d 160, 172, 383 N.E.2d 919, 923 (1978). The Act modified the common law rule that "the death of

3

either party abated tort actions." *Bryant v. Kroger Co.*, 212 Ill. App. 3d 335, 336, 570 N.E.2d 1209, 1210 (1991) (citation omitted). It "changed the common law to allow representatives of the deceased to maintain an action which had accrued during the deceased's lifetime." *Id.* (citation omitted). But the injury Plaintiffs seek to redress in this case accrued after Nate Nelson died. Thus the Act – and our opinion in *Abiola* – are irrelevant to determining whether Lloyd Nelson can sue on his own behalf and on behalf of his mother.

Presumably, someone inherited Nate Nelson's interest in royalties or use fees for *I Only Have Eyes For You*, either through a specific devise or as part of the residue of his estate, and has standing to sue in this case. However, Plaintiffs have failed to allege in their amended complaint that Lloyd Nelson or his mother inherited Nate Nelson's interest in *I Only Have Eyes For You*. Absent this information, the Court cannot determine whether Nelson or his mother have standing to sue. Plaintiffs must supplement their pleadings with a factual basis for asserting that Lloyd Nelson has standing to sue on behalf of himself and his mother as Nate Nelson's successors in interest. If they fail to do so, Lloyd Nelson's claim will be dismissed for lack of standing (which, in turn, may give rise to the need to join some other party, for the reasons we are about to discuss).

*2.   Joinder*

Defendants argue that Paul Wilson and the estates of Nate Nelson and Ezikil Carey are indispensable parties to this lawsuit and, therefore, the case must be dismissed in their absence.[2] Under Fed. R. Civ. P. 19(a),

---

[2] This argument assumes that Lloyd Nelson does not have standing to sue as successor in interest of his father, Nate Nelson.

4

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(b) prescribes dismissal of the suit when "equity and good conscience" require it if "a person as described in subdivision (a)(1)-(2) hereof cannot be made a party." Defendants argue the Court must dismiss Plaintiffs' suit because Wilson and the estates of Nelson and Carey should be joined under Rule (a)(2)(i) and (ii) and proceeding without them would offend equity and good conscience.

Inexplicably, Defendants ignore that dismissal is appropriate only "if a party who should be joined under Rule 19(a) is a party whose joinder would deprive the court of jurisdiction." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). If the Court finds that an absentee should be joined under Rule 19(a)(1) or (2) and joining the absentee would not deprive the court of jurisdiction, "the court shall order that the person be made a party." Fed. R. Civ. P. 19(a).

> If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

*Id.* In other words, if the absent party can be joined voluntarily or involuntarily without destroying jurisdiction, dismissal of the entire case is inappropriate.

The Court's jurisdiction to hear this case is conferred by § 301 of the LMRA, codified at

29 U.S.C. § 185(a), and 28 U.S.C. § 1331, which provides district courts with jurisdiction to hear "actions arising under the Constitution, laws, or treaties of the United States." Defendants do not argue that joining Wilson and the estates of Nelson and Carey would deprive the Court of jurisdiction. For this reason, there is no basis to dismiss the case under Rule 19. Thus the Court need only consider the first part of Defendants' argument, that is whether Wilson and the estates of Nelson and Ezikil Carey are necessary parties.

The Court notes that "[t]here is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a)." C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1604, at 38 (3d ed. 2001). The Court must take several factors into consideration, such as "avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." *Id.* at 39. Rule 19(a) provides two standards for joinder. "The first joinder standard, which is prescribed in Rule 19(a)(1), is designed to protect those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." *Id.* at 41. Defendants do not claim that joinder is necessary under this standard, *see* Mot. to Dismiss at 4, so the Court will consider only the second standard.

The second joinder standard, set forth in Rule 19(a)(2), "relates to situations in which the action cannot be effectively adjudicated because the absentee claims an interest in the subject matter of the action and disposing of the case in the person's absence may prejudice either those already before the court or the absentee." Wright, Miller & Kane, *supra*, at 51. Defendants argue that the absentees have an interest in the subject matter of this dispute – that is, whether the

singers of *I Only Have Eyes For You* are entitled to compensation from Pepsico and BBDO for use of the song – and proceeding without their involvement will prevent them from protecting their claims. Defendants further argue that they will be prejudiced if the absentees are not joined because the absentees eventually may choose to sue Pepsico and BBDO, exposing them to double or multiple damages.

Plaintiffs argue the latter concern is insubstantial because they seek only the royalties or fees owed to each individual singer (or his successor in interest) currently named as a plaintiff. Plaintiffs reason that if the remaining members of the Flamingos (or their successors in interest) choose to sue Defendants at a later date, Pepsico and BBDO will be liable only for the use fees and damages due those individuals. Plaintiffs argue this cannot be considered to be exposure to double or multiple liability, because the amount awarded in this case and subsequent cases filed by the absent group members would be equal to the amount that would be awarded if all the members of the band (or their successors) sued together.

The Court agrees with Plaintiffs that Defendants will not be exposed to duplicative damages if absentees are not joined. However, as a practical matter, Defendants – and the court system – will face duplicative litigation costs if the absent singers of *I Only Have Eyes For You* sue at a later date. Rule 19 "should be employed to promote the full adjudication of disputes with a minimum of litigation effort." Wright, Miller & Kane, *supra*, § 1602, at 20. Judicial economy weighs in favor of joinder in this case.

More importantly, the absentees' interests may be compromised if they are not party to this case. Defendants do not contend that claim preclusion would apply to subsequent cases filed by the absentees; they claim only that their or the absentees' interests may be jeopardized because

7

a later judge may choose to follow whatever ruling is rendered in this suit. *See Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457, 461 (7th Cir. 1984) ("Of course, Rule 19 requires us to look beyond whether a non-party would technically be bound and to consider whether the judgment would 'as a practical matter' impair the non-party's interests."). There is at least some possibility, however, that if Defendants prevailed in this suit and the absentees subsequently sued, Defendants could successfully raise the defense of claim preclusion. "'For [claim preclusion] to apply in federal court three requirements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. . . . In the first requirement, a cause of action consists of a "single core of operative facts" which give rise to a remedy.'" *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997) (quoting *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995) (citations omitted)). The facts on which the absentees' suit would be based are identical to those at issue here. Defendants would be the same in any subsequent proceeding, and a decent argument can be made that the absentees are in privity with Plaintiffs because they have "a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)" – their recording of *I Only Have Eyes For You*. Black's Law Dictionary (7th ed. 1999). The Court cannot conclusively say that claim preclusion would apply, but we need not do so to conclude that the absentees are necessary parties, because Rule 19(a)(2) requires only that the absentees' interests "may" be harmed. *See, e.g., Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d 815, 821 (9th Cir. 1985) (finding party was necessary under Rule 19(a) because "a significant possibility exist[ed]" that the party would be precluded from relitigating issues decided in the case). For these reasons, the Court concludes that the absentees should be joined in this suit.

8

The Court gives Plaintiffs fourteen days to amend their complaint to name as plaintiffs Paul Wilson, Nate Nelson and Ezikil Carey, or their successors in interest.[3] If Plaintiffs fail to do so, the Court will compel their joinder as involuntary plaintiffs. *See* Wright, Miller & Kane, *supra*, § 1604, at 66 ("Once it has been decided that a person whose joinder is feasible should be brought into the action, the claimant should be given a reasonable opportunity to add that person. If plaintiff fails to do so, the court should order joinder itself . . . ."). If, however, the absentees relinquish their rights to sue Defendants for their use of *I Only Have Eyes For You*, they will not need to be joined, because they will no longer have an interest in these proceedings.

*3.     Count 1*

In Count 1 of their amended complaint, Plaintiffs seek enforcement of paragraph 28 of the Commercials Contract under § 301 of the LMRA, 29 U.S.C. § 185. Paragraph 28 states:

> Producer agrees that . . . no part of any phonograph record, tape or other audio recording or of any other production of a principal performer *made under the jurisdiction of AFTRA* (including singers unless they are in an unidentifiable group) shall be used in commercials without separately bargaining with the principal performer and reaching an agreement regarding such use prior to any utilization of such . . . soundtrack under this Contract. . . . The minimum compensation to which the principal performer may agree in such bargaining shall be the applicable session fee and applicable use fees provided in this Contract. Group singers in an unidentifiable group shall be paid applicable use fees as provided in this Contract.
> If Producer fails to separately negotiate as provided above, the principal performer shall be entitled to damages for such unauthorized use equivalent to three times the amount originally paid the principal performer for the number of days of work covered by the material used plus the applicable minimum use fees under this Contract but not less than three times the applicable session fee at the rates provided under this Contract plus the applicable minimum use fees under this Contract. However, the principal performer may, in lieu of accepting such

---

[3] Plaintiffs will have met this requirement as to Nate Nelson if they supplement their pleadings as discussed above to allege Lloyd Nelson and his mother are the successors in interest to Nate Nelson's rights to royalties and fees for the song.

9

damages, elect to bring an individual legal action in a court of appropriate jurisdiction to enjoin such use and recover such damages as the court may fix in such action.

Def. Ex. A ¶ 28 (emphasis added). Defendants argue Count 1 must be dismissed because *I Only Have Eyes For You* was not "made under the jurisdiction of AFTRA."

First, Defendants argue that Plaintiffs failed to allege in their amended complaint that the song was recorded under the jurisdiction of AFTRA. It is true that the amended complaint does not contain the sentence: "*I Only Have Eyes For You* was made under the jurisdiction of AFTRA." Plaintiffs have alleged, however, that "[o]n or about June 16, 1958, Gone Recording Corp. signed a collective bargaining agreement with the American Federation of Television and Radio Artists ("AFTRA")" and that "[a]mong the recordings created by the Flamingos for Gone Recording Corp. was *I Only Have Eyes For You*." Am. Compl. ¶¶ 4-5. When considering a motion to dismiss for failure to state a claim, the Court must take all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002) (citing *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000)). The reasonable inference from the amended complaint is that *I Only Have Eyes For You* was recorded under the jurisdiction of AFTRA.

Defendants go on to argue that *I Only Have Eyes For You* was in fact not recorded under the jurisdiction of AFTRA because it was actually recorded for End Records – not Gone Recording, as Plaintiffs allege. This argument, which contradicts the allegations in the amended complaint, is not appropriately made in a motion to dismiss for failure to state a claim. Defendants' third argument for dismissal is similarly inappropriate. Defendants argue that if Plaintiffs claim that the song was made under the jurisdiction of AFTRA because End Records

and Gone Recording were owned by the same company, Count 1 must be dismissed because it would depend on the definition of "made under the jurisdiction of AFTRA" that can only be rendered by an arbitrator. The Commercials Contract includes a general arbitration clause, which states:

> All disputes and controversies of every kind and nature whatsoever between any Producer and the Union or between any Producer and any principal performer and extra performer ("performer") arising out of or in connection with this Contract, and any contract or engagement (whether overscale or not and whether at the minimum terms and conditions of this Contract or better) in the field covered by this Contract as to the existence, validity, construction, meaning, interpretation, performance, nonperformance, enforcement, operation, breach, continuance, or termination of this Contract and/or such contract or engagement, shall be submitted to arbitration . . . .

Def.'s Ex. A ¶ 56. The flaw in Defendants' argument is that an interpretation of the phrase "made under the jurisdiction of AFTRA" is claimed to be necessary only if the song was recorded by End Records – but at present the Court must accept as true Plaintiffs' allegation that the song was recorded for Gone Recording.

It is unclear to the Court why Defendants made their request for arbitration as part of a Rule 12(b)(6) motion. Such requests are normally made as part of a motion to stay the case and compel arbitration, and as such it is proper to rely on materials outside the pleadings. But that is not what Defendants have done, and in any event, they have provided no evidentiary support for their contention that the song was recorded for End Records, not Gone Recording. So even if filed as a motion to compel arbitration, the request would have to be denied at this point.

On the other hand, if there is a genuine dispute over the issue of whether the song was recorded under AFTRA's jurisdiction, under the Commercials Contract that is the very type of issue that is to be decided by an arbitrator rather than by a court. Plaintiffs argue that claims

11

arising under paragraph 28 of the Commercials Contract do not have to be submitted to arbitration because it states that "the principal performer may, in lieu of accepting such damages [as set forth in paragraph 28], elect to bring an individual legal action in a court of appropriate jurisdiction to enjoin such use and recover such damages as the court may fix in such action." Def. Ex. A ¶ 28. But the Court does not read this clause as invalidating the broad arbitration clause contained in paragraph 56. Rather the relevant clause in paragraph 28 pertains to available remedies. It offers a remedy to the performer – injunctive relief – that paragraph 56 does not give the arbitrator the power to provide. The clause allows a performer who seeks injunctive relief to pursue her suit in court; to prevent the performer from having to pursue both arbitration and litigation when she seeks damages in addition to an injunction, paragraph 28 allows the performer to seek damages from a court if she also seeks an injunction. Plaintiffs do not seek to enjoin Defendants, and thus the clause in paragraph 28 is immaterial. Rather than putting off a determination of whether any part of this suit should be referred to an arbitrator, the Court finds it prudent, and judicial economy dictates, that the issue be dealt with sooner rather than later. If Defendants truly want to compel arbitration, they are to file a properly supported motion to compel arbitration within 10 days of this order.

4. *Count 2*

Defendants argue the Court must dismiss Count 2 because it is preempted by § 301 of the LMRA, which provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations." 29 U.S.C. § 185(a). The Supreme Court has made clear that "§ 301 not only provides federal-court jurisdiction over controversies involving

collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). The Court reasoned that this was necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Id.* at 404 (footnote omitted).

In furtherance of this goal, the Supreme Court held "that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). As explained by the Supreme Court more recently, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute." *Lingle*, 486 U.S. at 405-06 (footnote omitted). The Court has construed § 301 "to make federal law the exclusive remedy not only for claims based on collective bargaining contracts but also for claims that cannot be adjudicated without interpreting such a contract." *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 724 (7th Cir. 2000) (citations omitted).

Plaintiffs' breach of contract claim is not preempted by § 301 if "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle*, 486 U.S. at 407 (footnote omitted). That is, "as long as the state-law claim can be resolved without

13

interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Id.* at 410 (footnote omitted). "[W]here a state law cause of action requires mere reference to a [collective bargaining agreement], section 301 preemption will not necessarily apply." *Tifft v. Commonwealth Edison Co.*, — F.3d —, 2004 WL 885732, at *2 (7th Cir. 2004). Thus whether Count 2 is preempted depends on whether it requires an application of the Commercials Contract or merely makes reference to it.

The licensing agreement incorporates paragraph 28 of the Commercials Contract – and it is not a mere reference. The licensing agreement does not give Plaintiffs any rights independent of the Commercials Contract; all obligations Defendants owe to Plaintiffs under the licensing agreement depend on the rights conferred upon Plaintiffs in the Commercials Contract. Thus whether Defendants breached the licensing agreement depends entirely on whether they breached paragraph 28 of the Commercials Contract. The Seventh Circuit recently stated that a state-law claim is preempted if it "is meaningless without reference to the agreements which articulate the Defendants' obligations toward these Plaintiffs." *Id.* at *5 (citations omitted). Plaintiffs' breach of the licensing agreement claim would be meaningless without reference to the rights conferred to Plaintiffs by the Commercials Contract. And so long as Plaintiffs can sue both Defendants for breach of the Commercials Contract under § 301(a),[4] Count 2 is entirely redundant – and § 301

---

[4] Even if discovery reveals that Pepsico was not a signatory to the Commercials Contract, it would still be liable for breach of the contract because paragraph 56(c) of the contract defines the term "Producer" as including "any third person to whom a commercial has been sold, assigned, transferred, leased or otherwise disposed of." Def. Ex. A ¶ 56(c).

The Court adds as a cautionary note that if one or both Defendants could not be sued for breach of the Commercials Contract, the Court would not dismiss Count 2 as to that party pursuant to the Seventh Circuit's opinion in *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 726-27 (7th Cir. 2000) (advising courts to refer for arbitration rather than dismiss state-law claims against

(continued...)

14

preemption is aimed in part at preventing such redundancies. Accordingly, Count 2 of Plaintiffs' amended complaint is dismissed.

## Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss as to Count 2 but otherwise denies the motion [docket # 6]. Plaintiffs are directed to amend their complaint within 14 days to provide the factual basis for Lloyd Nelson's standing to sue as successor in interest of Nate Nelson. Plaintiffs have the same 14 days to join as plaintiffs the members of the Flamingos, or their successors in interest, who are not currently parties to the case. If Plaintiffs fail to join the absentees, the Court will order their joinder as involuntary plaintiffs unless they waive their right to sue Defendants for their use of *I Only Have Eyes For You*.

MATTHEW F. KENNELLY
United States District Judge

Date: May 18, 2004

---

⁴(...continued)
defendants who were not parties to collective bargaining agreements even if the claims depend on interpretation of the collective bargaining agreements).