# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7151 | **DATE** | 10/4/2004 |
| **CASE TITLE** | Hunt vs. Pepsico, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court dismisses plaintiffs' request for an injunction and therefore grants defendants' motion to stay and compel arbitration (15-1). Plaintiffs are directed to submit their claim against the defendants to arbitration under paragraph 546 of the Commercials Contract. The Court assumes plaintiffs will do so promptly and therefore sets the case for a status hearing in approximately 120 days, on 2/9/05 at 9:30 a.m. All other schedules and deadlines are vacated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT - 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| ✓ | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES HUNT, TERRY JOHNSON JACOB C. CAREY, Administrator of the estate of Jacob A. Carey, and LLOYD NELSON, and GEORGIA WILSON, KENNETH WILSON, and RONALD WILSON, on behalf of Paul Wilson<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC. and BBDO WORLDWIDE, INC.,<br><br>Defendants. | RECEIVED<br>OCT - 6 2004<br><br>Case No. 03 C 7151 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Charles Hunt, Terry Johnson, Jacob C. Carey, as administrator of the estate of Jacob A. Carey, Lloyd Nelson, individually and on behalf of his mother, and Georgia, Kenneth, and Ronald Wilson, on behalf of Paul Wilson, sued Pepsico, Inc. and the advertising agency BBDO Worldwide, Inc., for using the song *I Only Have Eyes For You* in a Pepsi commercial without paying them reuse fees or royalties. Plaintiffs allege that they or their predecessors in interest recorded the song for Gone Recording Corp., which was a signatory to a collective bargaining agreement with the American Federation of Television and Radio Artists ("AFTRA"). Am. Compl. ¶¶ 4-5. Plaintiffs further allege that Pepsico and BBDO were bound by a collective bargaining agreement with AFTRA and the Screen Actors Guild called the Commercials

1



Contract. *Id.* ¶ 6.

The Commercials Contract contains a general arbitration clause in paragraph 56 that declares:

> All disputes and controversies of every kind and nature whatsoever between any Producer and the Union or between any Producer and any . . . performer arising out of or in connection with this Contract . . . as to the existence, validity, construction, meaning, interpretation, performance, nonperformance, enforcement, operation, breach, continuance, or termination of this Contract and/or such contract or engagement, shall be submitted to arbitration . . .

Def. Ex. A ¶ 56. Defendants, relying on paragraph 56, have moved to stay this action and compel arbitration.

Plaintiffs assert that their claims fall under another provision of the Commercials Contract that they say allows a performer to avoid arbitration and bring a legal action in court. Paragraph 28 reads:

> Producer agrees that . . . no part of any phonograph record, tape or other audio recording or of any other production of a principal performer made under the jurisdiction of AFTRA (including singers unless they are in an unidentifiable group) shall be used in commercials without separately bargaining with the principal performer and reaching an agreement regarding such use prior to any utilization of such . . . soundtrack under this Contract. . . . The minimum compensation to which the principal performer may agree in such bargaining will be the applicable session fee and applicable use fees provided in this Contract. Group singers in an unidentifiable group shall be paid applicable use fees as provided in this Contract.
> If Producer fails to separately negotiate as provided above, the principal performer shall be entitled to damages for such unauthorized use equivalent to three times the amount originally paid the principal performer for the number of days of work covered by the material used plus the applicable minimum use fees under this Contract but not less than three times the applicable session fee at the rates provided under this Contract plus the applicable minimum use fees under this Contract. *However, the principal performer may, in lieu of accepting such damages, elect to bring an individual legal action in a court of appropriate jurisdiction to enjoin such use and recover such damages as the court may fix in such action.*

Def. Ex. A ¶ 28 (emphasis added). Plaintiffs make three arguments to the Court as to why they

2

should be able to litigate their claims under paragraph 28: (1) paragraph 28 should be interpreted as allowing a performer to seek injunctive *or* monetary relief in litigation; (2) even if a performer must bring injunctive relief, injunctive relief is appropriate in this case; and (3) arbitration is an illusory remedy in this case.

For the reasons stated below, the Court grants defendants' motion and orders arbitration of plaintiffs' claims.

## Discussion

Paragraph 56 is a broad arbitration provision covering any dispute relating to the Commercials Contract. Such broad arbitration clauses create a presumption of arbitrability. *See, e.g., Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002); *see generally, AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Plaintiffs argue that paragraph 28 entitles them to bring suit in court for disputes concerning unauthorized use in a commercial of a work made under AFTRA's jurisdiction. The Court previously ruled, however, that paragraph 28 only allows a suit in court by a performer who has a claim for injunctive relief — a remedy not available in arbitration. *Hunt v. Pepsico*, No. 03 C 7151, 2004 WL 1114592 (N.D. Ill. May 18, 2004). The Court ruled that under paragraph 28, a performer entitled to take advantage of this exception can also seek damages as part of his suit for an injunction. *Id.*

Plaintiffs do not have a viable claim for an injunction. A court may grant an injunction when there is a risk of irreparable injury and legal remedies are inadequate. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982); *see also, Younger v. Harris*, 401 U.S. 37, 46 (1971)

3

(showing of irreparable injury is the "traditional prerequisite to obtaining an injunction"). In this case a showing of irreparable injury would require some indication that the defendants might use *I Only Have Eyes For You* again in the future. But the plaintiffs have advanced no viable argument that any such risk exists. They waited well over six years after the song was used by the defendants to file suit, and in the interim the use was not repeated. They point to no evidence suggesting any possibility that the defendants would, at this late date, revive the 1997 commercial or use the song in some other commercial.

Plaintiffs' arguments regarding the proper interpretation of paragraph 28 of the Commercials Contract do not warrant reconsideration of the Court's earlier construction of that provision. At most plaintiffs have suggested some doubt regarding whether their dispute is arbitrable. But the law is clear that doubts regarding whether a broad arbitration clause like this one covers a particular dispute are to be resolved in favor of arbitration. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). What this means is that "'[a]n order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *Steelworkers v. Warrior & Golf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). No such "positive assurance" exists here As discussed in the Court's earlier ruling, the Commercials Contract is plainly susceptible of a reasonable interpretation that disputes of this type are subject to arbitration, except in cases in which a viable claim for injunctive relief may be made, in which case the performer may file suit in court. None of the considerations cited by plaintiffs in their response to the motion to stay require or warrant a construction of the contract

4

that permits performers to ignore the broad arbitration clause and file suit in court in cases like this one in which there is no viable injunctive relief claim.

Finally, the Court rejects plaintiffs' argument that the arbitration remedy is illusory. Plaintiffs contend that the Screen Actors Guild will refuse to arbitrate plaintiffs' claim because plaintiffs elected to file suit in court. This amounts to a contention that a performer can defeat the contract's arbitration requirement simply by electing to file suit instead. That would render the arbitration requirement meaningless. The Court rejects plaintiffs' argument and assumes that SAG will serve the interests of its members by conducting arbitration as it agreed to do in the Commercials Contract. In this regard, the Court is unpersuaded by plaintiffs' citation to *Universal City Studios, Inc. v. Screen Actors Guild, Inc.*, No. CV 01-9028 (C.D. Cal. Feb. 22, 2002), in which the court appears to have accepted an interpretation of the Commercials Contract that gives the performer an unfettered option to elect whether to enforce the contract by arbitration or by filing suit.

## Conclusion

For the reasons stated above, the Court dismisses plaintiffs' request for an injunction and therefore grants defendants' motion to stay and compel arbitration [docket no. 15]. Plaintiffs are directed to submit their claim against the defendants to arbitration under paragraph 56 of the Commercials Contract. The Court assumes plaintiffs will do so promptly and therefore sets the case for a status hearing in approximately 120 days, on February 9, 2005 at 9:30 a.m. All other

schedules and deadlines are vacated as moot.

                                                                                               _____
                                                                                               MATTHEW F. KENNELLY
                                                                                               United States District Judge

Date:   October 4, 2004