IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES HUNT, p/k/a TOMMY HUNT, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 03 C 7151 |
| PEPSICO, INC. & BBDO WORLDWIDE, INC., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs are members (or successors in interests of members) of the band, "The Flamingos," which in the 1950s recorded the popular song, *I Only Have Eyes for You*. They sued Pepsico, Inc. and BBDO Worldwide, Inc. for using the song during a 1997 Super Bowl commercial without their permission. The case is presently before the court on plaintiffs' motion to confirm an arbitration award. For the following reasons, the Court grants plaintiffs' motion.

Plaintiffs originally brought suit in this Court pursuant to the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging that defendants had violated the terms of a collective bargaining agreement with the American Federation of Television and Radio Artists (AFTRA). That agreement, which the parties refer to as the "Commercials Contract," prevented certain companies, including the defendants, from using a sound recording made under the jurisdiction of the AFTRA in a commercial "without separately bargaining with the principal performer and reaching an agreement regarding such use prior to any utilization of such [] sound track." Second Amend. Comp. ¶ 6. Plaintiffs alleged that defendants' use of their song during the Super

Bowl violated this provision.

On October 4, 2004, the Court – on the defendants' motion – ruled that the plaintiffs' claim was subject to arbitration. In reaching that conclusion, the Court analyzed Article 28 of the Commercials Contract, which states,

> If Producer fails to separately negotiate as provided above, the principal performer shall be entitled to damages for such unauthorized use equivalent to three times the amount originally paid the principal performer for the number of days of work covered by the material used plus the applicable minimum use fees under this Contract but not less than three times the applicable session fee at the rates provided under this Contract plus the applicable minimum use fees under this Contract. However, the principal performer may, in lieu of accepting such damages, elect to bring an individual legal action in a court of appropriate jurisdiction to enjoin such use and recover such damages as the court may fix in such action.

The Court determined that Article 28 "only allows a suit in court by a performer who has a claim for injunctive relief." Because the plaintiffs were not entitled to injunctive relief, the Court agreed with defendants that plaintiffs' claims had to be resolved in arbitration. *Hunt v. Pepsico*, No. 03 C 7151, 2004 WL 2260621, *2 (N.D. Ill. Oct. 4, 2004).

On September 23, 2005, the parties participated in an arbitration hearing. Much of the proceeding focused on the meaning of Article 28. The defendants argued that the contract only allowed the plaintiffs to recover liquidated damages as described in the first sentence of Article 28. The plaintiffs, on the other hand, contended that the contract did not instruct the arbitrator what kind of damages were appropriate when a court referred the case back to arbitration.

Ultimately, the arbitrator agreed with the plaintiffs and found that once a performer sues in court and opts out of the liquidated damages formula, he is entitled to actual damages even if the Court refers the case back to arbitration. The arbitrator opined that the Court's October 4, 2004 decision reflected "the current role of the federal courts in deferring disputes to arbitration

2

where the parties' agreement clearly reflects that they have elected arbitration of all disputes." He said that consistent with that role and with the broad arbitration provision found in Article 56 of the collective bargaining agreement, the contract allowed him to consider the issue of damages as though it were before the Court in the first instance. The arbitrator went on to consider liability and total damages and found in favor of the plaintiffs in the amount of $250,000.

In opposing confirmation of this award, defendants essentially repeat the argument they made to the arbitrator. They argue that the arbitrator clearly exceeded his delegated power "by awarding a measure of damages not provided for by the Commercials Contract." They maintain that under the contract's clear language, the arbitrator was only allowed to award liquidated damages as described in the first sentence of Article 28 and that actual damages could only be awarded by a court. They also contend that the arbitrator's ruling conflicts with the construction of Article 28 by the Court in deciding to send the case to arbitration. Plaintiffs counter that the Court did not tell the arbitrator how to interpret the contract and that the arbitrator properly carried out his role of awarding damages authorized by an interpretation of the contract.

First of all, the Court rejects defendants' argument that the arbitrator's award should not be confirmed because he supposedly did not adopt the Court's interpretation of the contract. The Court's role was limited to deciding whether the dispute was to be decided by an arbitrator rather than by a judge or jury. Having determined – as defendants argued – that the dispute had to be submitted to arbitration, the Court did not, and could not properly, predetermine in any respect the merits of the dispute. Construction of the contract for purposes of resolving the plaintiffs' claims was a matter conferred upon the arbitrator, not the Court.

Defendants' other argument is that the arbitrator selected a damages measure not

3

provided for in the contract. The Seventh Circuit has held that the role of this Court is extremely limited when it is reviewing an arbitrator's decision. *Chameleon Dental Prods., Inc. v. Jackson*, 925 F.2d 223, 225 (7th Cir. 1991). "Our review is restricted to determining whether the arbitrator actually interpreted the contract . . . .If so, then [that] interpretation governs." *Id.* "It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to draw its essence from the [contract]." *N. Ind. Pub. Serv. Co. v. United Steelworkers of Am. AFL-CIO-CLC*, 77 F.3d 1025, 1028 (7th Cir. 2001). The arbitrator's decision must stand unless "it was no interpretation at all and thus exceeded the arbitrators' delegated power, which is limited to interpretation." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004).

In *Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus.*, 39 F.3d 821, 824 (7th Cir. 1994), a corporation arbitrated a dispute with the pipefitters' union concerning whether the corporation's assignment of "preventative maintenance work" to employees outside the bargaining unit violated a collective bargaining agreement. The relevant contract provision said that "maintenance work" was covered by the agreement but did not expressly state whether "preventative maintenance work" was covered. *Id.* at 823. The arbitrator, after analyzing the history of the collective bargaining agreement, held that the term "maintenance work" included preventative maintenance work. *Id.* at 824.

The district court reversed the arbitrator, ruling that there had been no "meeting of the minds" between the two parties concerning this provision, which meant that further arbitration on this issue was beyond the arbitrator's authority. *Id.* The Seventh Circuit reversed the district

4

court. *Id.* at 825. It stated that parties often agree to the terms of a collective bargaining agreement recognizing that they have disparate understandings of the contract provisions. *Id*. They nevertheless sign the contract hoping that, if a disagreement arises, an arbitrator will rule in their favor. *Id*. It is only when the contract contains a latent ambiguity, which is the result of a mutual misunderstanding of otherwise unambiguous contract terms, that an arbitrator lacks interpretive authority. *Id.* "Faced with an ambiguous provision in the Agreement," the court said the arbitrator properly considered the surrounding circumstances to determine its meaning. *Id.*

By contrast, in the two primary cases cited by defendants, the Seventh Circuit reversed an arbitrator's decision, where his interpretation plainly contradicted the express terms of the collective bargaining agreement. *Anheuser-Busch, Inc. v. Beer & Soft Drink Union*, 280 F.3d 1133, 1145 (7th Cir. 2002); *Polk Bros. v. Chi. Truck Drivers, Helpers & Warehouse Workers Union*, 973 F.2d 593, 598-99 (7th Cir. 1992). In *Anheuser-Busch*, a collective bargaining agreement provided two different commission rates: one for delivery drivers working alone and another for delivery drivers working with a helper. 280 F.3d at 1135. Despite the clear meaning of this agreement, the arbitrator ruled that the company's past practice of paying one commission rate to all drivers constituted a "post-execution amendment" to the contract. *Id.* The Seventh Circuit reversed because the agreement's unambiguous terms prevented the arbitrator from looking to practices pre-dating the agreement. *Id.* at 1145 (Rovner, J., concurring).[1]

---

[1] As recognized in *Intl. Union of Operating Eng'rs, Local 139, AFL-CIO v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 746-47 (7th Cir. 2004), Judge Rovner's concurring opinion in *Anheuser-Busch* "tipped the balance" between Judge Coffey's lead opinion and Judge Easterbrook's dissenting opinion. Judge Rovner's opinion also decided the case on the narrowest grounds, meaning it is properly cited for the court's holding. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

In *Polk Bros.*, the company in question laid off a number of union workers after a fire destroyed its distribution center. 973 F.2d at 594. It hired third party carriers to provide warehousing and home delivery of its merchandise, which the union claimed violated its collective bargaining agreement. *Id.* at 595. The claim went to arbitration, and the arbitrator ruled in the union's favor. *Id.* The collective bargaining agreement ended on March 31, 1988, however, and the arbitrator awarded benefits exceeding the expiration date of the contract. *Id.* On appeal, the Seventh Circuit held that the award exceeded the arbitrator's authority because it ignored the contract's express termination date. *Id.* at 598-99.

In the present case, the arbitrator's ruling did not contradict the express terms of the contract. First, when Article 28 says that if a producer fails to negotiate with a performer, the performer "shall be entitled" to liquidated damages as specified, this does not necessarily mean that the performer shall *only* be entitled to damages in that amount. In other words, the first sentence of Article 28 can be read to set a floor, not a ceiling, on the damages that can be recovered. Though the Court might not resolve this issue in the same way as the arbitrator were we considering the issue *de novo*, that is of no consequence, for the Court's role is only to determine whether the arbitrator interpreted the contract.[2] *Johnson Controls,* 39 F.3d at 824-25. We conclude that the arbitrator did exactly that in this case; he did not make a decision that failed to "draw its essence from the contract."

In addition, as in *Johnson*, the arbitrator faced an uncertainty – what to do if the performer elects to sue in court but the court refers the case to arbitration – and he resolved that

---

[2] We note that another arbitrator considering the exact same issue in another case came to the same conclusion as the arbitrator here, albeit for somewhat different reasons. *See Butler v. Target Corp.*, No. 72 300 01066 (April 27, 2005) (Horowitz, Arb.).

uncertainty by interpreting the contract in light of the Court's ruling and in light of the broad arbitration provision in Article 56.  As the arbitrator indicated, Article 28 makes only two statements about possible damage remedies, neither of which arguably pertains to the situation in this case.  First the agreement says, "If Producer fails to separately negotiate as provided above, the principal performer shall be entitled to [liquidated] damages . . . ."  Second, the agreement says, "the principal performer may, in lieu of accepting such damages, elect to bring an individual legal action in a court of appropriate jurisdiction to enjoin such use and recover such damages as the court may fix in such action."  The contract does not expressly instruct the arbitrator what to do in the event the performer elects to sue in court for actual damages, but the court refers the case back to arbitration.  The contract does not preclude, under those circumstances, a damage award beyond the liquidated damages provision.

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion to confirm the arbitration award [docket no. 40].  The Clerk is directed to enter judgment in favor of the plaintiffs and against the defendants in the amount of $250,000.

_____
MATTHEW F. KENNELLY
United States District Court

Date: January 27, 2006